716 So.2d 441 (1998)
Roger COX, Sr.
v.
The BOARD OF ADMINISTRATORS OF the TULANE EDUCATIONAL FUND and Roch B. Hontas, M.D., and Westpark Community Hospital.
Nos. 97-CA-2350, 97-C-1320.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1998.
*442 Robert E. Tarcza, Juliet Puissegur Bland, New Orleans, for Plaintiff/Appellant.
Stewart E. Niles, Jr., Amy M. Winters, Jones, Walker, Waechter, Poitevent, Carrere, & Denegre, New Orleans, for Defendants/Appellees.
Before BARRY, WALTZER and LANDRIEU, JJ.
LANDRIEU, Judge.
This matter arises out of a medical malpractice suit filed by the plaintiff/appellant against the defendants, the Board of Administrators of the Tulane Educational Fund (Tulane), Roch B. Hontas, M.D., and Westpark Community Hospital. The district court on May 22, 1997, granted the defendants' motion for summary judgment on the issue of proper discharge instructions, but it denied the motion with regard to the issue of informed consent. The plaintiff appealed the district court's grant of summary judgment. The defendants filed an application for supervisory writs on the denial of their motion for summary judgment, No. 97-C-1320. That writ application was consolidated with the instant appeal. After reviewing the case de novo, we affirm the district court's ruling in part and reverse it in part.
Mr. Cox injured himself while working at his automobile mechanic job for Hammond Motor Company on September 6, 1991. He was taken to the emergency room of Westpark Community Hospital where he was examined by Dr. Hontas. Dr. Hontas determined that the laceration to Mr. Cox's little finger on the right dominant hand cut two tendons. He recommended exploratory surgery to assess the extent of the damage and to repair the injury to the nerves and tendons as necessary. Mr. Cox elected and consented to the surgery.
Mr. Cox underwent surgical repair on the two tendons. A dorsal-hooded plaster splint wrapped with an ACE bandage was applied to the finger and a brassiere hook was attached to the nail with super glue. The hook *443 was attached by a rubber band to a safety clip over the volar surface of the wrist. Mr. Cox was discharged thereafter with routine narcotic analgesics and instructions for splint and bandage care. He was advised to keep the splint dry and intact, to move the finger as little as possible, and to return in ten days. Mr. Cox was discharged to normal activities. Mr. Cox chose to return to his employment. There, he placed a plastic bag over the splint and applied undercoating to automobiles.
Mr. Cox was next evaluated by Dr. Hontas on September 11, 1991. The splint was not intact. Badly battered, it was broken or cracked at the wrist and apparently nonfunctional with the brassiere clip unattached. Mr. Cox held his finger in a slightly extended posture with virtually no ability to flex the joints actively. Dr. Hontas surmised that the broken splint may have resulted in rerupture of the tendons and referred Mr. Cox to Dr. Ollie Edmunds at Tulane University Medical Center for evaluation and for potential treatment options.
Dr. Edmunds recommended a course of occupational therapy and, thereafter, a twostage procedure with insertion of a prosthesis described as a Hunter silicone tendon rod followed by a free tendon graft. Following a course of occupational therapy, Mr. Cox was admitted to the Medical Center on January 6, 1992, for surgery consisting of flexor tendon removal with Hunter rod replacement of the right little finger.
Following surgery, Mr. Cox was seen by Dr. Edmunds in his orthopaedic clinic. Mr. Cox developed an infection which necessitated the removal of the prosthesis. Ultimately, Mr. Cox was required to undergo amputation of the right little finger. He also suffered permanent partial loss of use of two other fingers on the dominant hand, severe scarring on the right wrist, and loss of wages due to his inability to work in his occupation. In June of 1992, after attending occupational therapy and a "work hardening program," Mr. Cox was released for work.
Mr. Cox filed a complaint with the Commissioner of Insurance on August 28, 1992, against Tulane Medical Center, Dr. Edmunds, and Dr. Hontas. A medical review panel unanimously opined that the evidence did not support the conclusion that Tulane, Dr. Edmunds, or Dr. Hontas failed to meet the applicable standards of care as charged in the complaint.
Eventually, Mr. Cox filed a suit in civil district court against Tulane, Dr. Hontas, and Westpark. Dr. Edmunds was not named as a party defendant. In his complaint, Mr. Cox alleged that Tulane and Dr. Hontas failed to provide him with meaningful information for informed consent Specifically, Mr. Cox alleged Dr. Hontas had omitted any information that the surgery could be delayed to allow Mr. Cox to obtain a different physician, that cost for a specialist was not a factor because he was a workers' compensation patient, and that Dr. Hontas was board eligible but not board certified in orthopaedic surgery and had only been practicing for one and a half years.
Mr. Cox also alleged Dr. Hontas and Westpark provided him with insufficient discharge instructions. Specifically, he alleged he was not advised on the care and treatment of the splint, on any restrictions upon his activities, or on the appropriate time for follow-up visits.

LAW
This court reviews summary judgments de novo under the same criteria as the district court. Gibson v. Roberts, 97-0454, p. 2 (La. App. 4 Cir. 10/15/97), 701 So.2d 501, 503. Summary judgment is favored and shall be construed to secure a just, speedy, and inexpensive determination of the action. La. Code Civ. Proc. art. 966 A(2). After adequate discovery, a motion which shows there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law shall be granted. La.Code. Civ. Proc. art. 966 C(1). As amended by Acts 1997, No. 483, § 1, eff. July 1, 1997, Article 966 C(2) provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require *444 him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This amendment, illuminating the burdens of production of the parties in a summary judgment context, may be applied retroactively. Motton v. Lockheed Martin Corp., 97-0204, p. 8 (La.App. 4 Cir. 11/26/97), 703 So.2d 202, 206.
An issue is genuine if reasonable persons could disagree. Smith v. Our Lady of the Lake Hospital, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. If, on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on the issue. Id. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Walker v. Kroop, 96-0618, p. 2 (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 583.

DISCHARGE INSTRUCTIONS
As noted above, the district court, without written reasons, granted the defendants' motion for summary judgment with regard to the issue of proper discharge instructions. The defendants alleged in their motion for summary judgment that no expert testimony established either a breach in the standard of care or a causal relationship between the damages and the defendants' actions. The plaintiff responded that no expert testimony was needed to satisfy his burden of proof on the issues of returning to normal activities and caring for the splint.
On appeal, Mr. Cox asserts the district court erred in granting the motion, thereby requiring him to prove by expert medical testimony that Dr. Hontas's postoperative discharge instructions, which failed to include work restrictions and timely follow-up care, were inadequate for an automobile mechanic. He also asserts genuine issues of material facts remained unresolved by the evidence.
Mr. Cox contends a lay person can conclude based upon common knowledge that Dr. Hontas was negligent in his failure to give sufficient post-operative discharge instructions; thus, there is no need for expert medical testimony to prove negligence. He notes Dr. Hontas can testify only as to what he thinks he may have told Mr. Cox concerning the care of his splint, because he did not give written directions and has no written notes evidencing this information.
Medical expert testimony is not always necessary to prove a breach of the standard of care; however, such expert testimony is usually necessary to do so. E.g., Pfiffner v. Correa, 94-0924, 94-0936, 94-0992 (La.10/17/94), 643 So.2d 1228. Generally, only cases of obvious malpractice, e.g., leaving an instrument in the patient's body, are susceptible of resolution without expert medical testimony. Id.
The available record reveals that Dr. Hontas told Mr. Cox to keep the splint dry and intact, explained to him how the clip assembly enabled him to exercise his finger, told him to move the finger as little as possible, and advised him to return in ten days. Dr. Hontas gave Mr. Cox extra rubber bands and clips in case the originals became unattached from the finger and splint. As to his activities, the discharge instructions permitted a return to "normal activities." According to Dr. Harold Stokes, an expert in orthopaedics, "normal activities" signified that no bed rest was needed; he opined that the patient must use common sense in deciding which of his daily activities were acceptable. Dr. Stokes further testified that he usually sees his patients within two to seven days after surgery, but he did not believe that a delay of ten days amounted to a breach of the standard of care.
In his response to the defendant's motion, the plaintiff has failed to establish either the standard of care which should have been followed by Dr. Hontas in discharging Mr. Cox or a breach of that standard of care. The determination of the proper discharge protocol after a surgical procedure such as *445 the one undergone by Mr. Cox logically requires medical training and expertise. Expert testimony is therefore necessary to establish the standard of care. Here, the plaintiff failed to oppose the motion for summary judgment with expert testimony to counter Dr. Stokes's testimony that the instructions given to Mr. Cox were proper. Thus, the district court's ruling granting summary judgment on this claim is correct.

INFORMED CONSENT
The district court denied the defendants' motion for summary judgment on the issue of informed consent. The defendants alleged in their motion that Mr. Cox had failed to identify expert testimony on the issue of informed consent. Mr. Cox responded that material issues of fact remained as to what Dr. Hontas had told Mr. Cox about alternatives to immediate surgery and the risks associated with such surgery. He argues that an expert cannot testify as to what was said between the doctor and the patient. In their writ application, the defendants assert that the plaintiff's burden of proving a cause of action sounding in medical malpractice requires medical expert testimony.
La.Rev.Stat. 40:1299.40 establishes a presumption of valid consent where a written consent is signed. This presumption may be rebutted if the plaintiff establishes (1) the existence of a material risk which the physician must disclose, (2) the physician failed to inform the patient of a material risk, (3) the material risk was realized, and (4) there is a causal connection between the failure to inform the patient of the risk and realization of the risk. Hondroulis v. Schuhmacher, 612 So.2d 859, 861 (La.App. 4th Cir.1992) (citing Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1989)).
The determination of a material risk is a two-step process. The first step is to define the existence and nature of the risk and the likelihood of its occurrence. "Some" expert testimony is necessary to establish the existence and nature of the risk and the likelihood of occurrence because only a physician or other qualified expert is capable of judging what risks exist and the likelihood of occurrence. The second prong of the materiality test is for the trier of fact to decide whether the probability of that type of harm is a risk which a reasonable patient would consider in deciding on treatment. The focus is on whether a reasonable person in the patient's position probably would attach significance to the specific risk. This determination of materiality does not require expert testimony.
Hondroulis v. Schuhmacher, 553 So.2d 398, 412 (La.1989).
In a trial claiming inadequate disclosure of risk information by a physician, the patient must establish prima facie the essential elements of the cause of action: that the undisclosed risk actually occurred and, had the risk been disclosed, the treatment would have been avoided. Coscino v. Wolfley, 96-0702, p. 3 (La.App. 4 Cir. 6/4/97), 696 So.2d 257, 260, writs denied, 97-2317, 97-2539 (La.1/9/98), 705 So.2d 1100, 1102.
Mr. Cox alleged that he was kept in the waiting room at Westpark for over four hours and that he was given nothing to cover his bleeding finger. He alleges that Westpark did not provide him with a competent physician or, alternatively, apprise him (1) of the possibility of seeking treatment from another facility or physician or (2) that his hand could be secured temporarily so that he could seek treatment from a source more-qualified to handle this type of injury. He alleged that Dr. Hontas did not inform him that the surgery could be delayed or that he could obtain a second opinion from a more-qualified physician. He further alleges that Dr. Hontas failed to inform him of the risks of such surgery, namely that he could suffer amputation, stiffness, weakness, numbness, and chronic pain as a result of the surgery.
The medical review panel found that Mr. Cox had been properly and sufficiently informed of the surgery and its risks. Dr. Hontas's affidavit states Mr. Cox was provided sufficient information regarding the nature of the recommended surgical procedure, the alternatives, benefits, and risks of the procedure, including the risks of residual stiffness and lack of full motion of both joints, possible weakness of the finger, possible *446 infection, and possible re-rupture of the tendons. The operative report, dictated on the same day as initial treatment, stated that Dr. Hontas discussed with Mr. Cox the alternatives, indications, risk, benefits, and possible complications. Further, the standard consent form signed by Mr. Cox indicates the patient was advised of the risk of death, quadriplegia, or paraplegia, the loss of organ, arm, or leg, and disfiguring scars. The form notes that good results are expected but not guaranteed.
In his deposition, Mr. Cox denied that Dr. Hontas had advised him about the risks of surgery, though he did admit that the doctor told him something about the flexor tendons and repairing them. He further denied that Dr. Hontas had told him about the risk of permanent stiffness, lack of motion, weakness, or loss of sensation in the finger. He stated that Dr. Hontas looked at the injury, talked about flexor tendons needing repair, and said, "Prep him for surgery."
The only expert testimony which could be relied upon by the plaintiff is that of Dr. Stokes, who did state that re-rupture of the repaired tendon is not uncommon, even when the hand is kept nearly immobile. Therefore, this is the only material risk of which the plaintiff may reasonably assert he was not advised.[1] Dr. Hontas maintains that Mr. Cox was advised of all relevant risks, presumably including the possibility of rerupture. The district court believed the dispute as to what Mr. Cox was told before he consented to the surgery to constitute a genuine issue of a material fact. However, no medical evidence in this record points to any other negative risk except the possibility of re-rupture. Even had Dr. Hontas failed to advise Mr. Cox of this risk, we cannot, on the record before us, see how a rational trier of fact could find that a reasonable person would forego repair of the tendons in the face of a possibility, though significant, that the tendons might re-rupture or become separated and require further surgery. We decide that the defendants were entitled to summary judgment on the claim of informed consent and reverse the district court's ruling.
The application for supervisory writs is granted. The district court's ruling granting summary judgment on the claim of improper discharge instructions is affirmed. The district court's ruling denying summary judgment on the informed consent claim is reversed and summary judgment on that claim is granted.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] No expert testimony reveals that alternatives to the surgery existed, other than perhaps no surgery. Although Dr. Hontas and Dr. Stokes stated that the surgery could have been delayed for a short period of time, no evidence suggests that the procedure performed by Dr. Hontas was inadvisably elected or poorly performed. The plaintiff has not identified any other testimony outlining a material risk of which Mr. Cox should have been advised. Mr. Cox's assertions of what he should have been told are not persuasive as to the existence or likelihood of a material risk.