732 So.2d 654 (1999)
Mary LEGER, Plaintiff-Appellant,
v.
LOUISIANA MEDICAL MUTUAL INSURANCE CO., et al., Defendants-Appellees.
No. 98-1098.
Court of Appeal of Louisiana, Third Circuit.
March 31, 1999.
Writ Denied June 18, 1999.
*655 John Edward Morton, Alexandria, for Mary Leger.
Alan K. Breaud, Deborah Deo Gracias Trahan, Lafayette, for Lammico, et al.
Shepton F. Hunter, Timothy Reynolds, Lafayette, for Louisiana Health System Corp., etc.
Phillip W. Roberts, for Our Lady of Lourdes Regional Medical Center, Inc.
Before: DOUCET, C.J., SAUNDERS, and SULLIVAN, JJ.
DOUCET, Chief Judge.
In this medical malpractice action, Plaintiff, Mary Leger, appeals a decision of the district court granting Defendant, Dr. Edmund Nagem's, motion for summary judgment on the issue of informed consent. We affirm the judgment of the trial court.

FACTS
Ms. Mary Leger was referred to Dr. Edmund Nagem, Jr., a thoracic and cardiovascular surgeon, by her family physician for a thoracic aortic aneurysm in May of 1993. Ms. Leger, who was fifty-nine years old at the time, was a heavy smoker with a personal and family history of heart disease and hypertension. On June 9, 1993, she was hospitalized for a number of tests designed to confirm her family doctor's diagnosis and to reveal the extent of her problem. Those tests revealed two aneurysms: an ascending aortic aneurysm and a separate, descending aneurysm. Because of the seriousness and complexity of her condition, Dr. Nagem planned to do the needed repairs in two separate procedures. The ascending aortic aneurysm was corrected on June 15, 1993. The procedure went well and Ms. Leger was discharged on June 23, 1993. She was readmitted on September 14, 1993 for repair of the descending aneurysm. While the repair of the aneurysm was successful, Ms. Leger suffered paraplegia as a result of the surgery. That unfortunate consequence led to the filing of this suit.

LAW AND DISCUSSION
In Harkins v. Gauthe, 97-912, pp. 4-6 (La.App. 3 Cir. 2/4/98); 707 So.2d 1308, 1310-11, this court reviewed the changes in the law governing motions for summary judgment:
La.Code Civ.P. art. 966 contains the provisions for summary judgment. The newly amended version of this article provides, in part, as follows:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The *656 defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This recent amendment to the summary judgment provision has changed the traditional role that summary judgments are not favored and that documents submitted by the movant were to be strictly scrutinized while the indulgent treatment was given to those submitted by the party in opposition. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. The provision no longer favors a trial on the merit and now requires that the supporting documents submitted by each of the parties receive equal scrutiny. Id.

With regard to "material fact" as used in the above provision, the supreme court has explained this key term as follows:
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577, 583 (La. 1989). "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." South Louisiana Bank v. Williams, 591 So.2d 375, 377 (La.App. 3d Cir.1991), writs denied, 596 So.2d 211 (La.1992). Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. Sassone v. Elder, 626 So.2d 345, 352 (La. 1993); Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1153-54 (La.1983) (collecting cases); McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308, 310 (La.App. 2d Cir.), writ denied, 457 So.2d 1194 (La.1984) (noting that "[s]ummary judgment may not be used as a substitute for trial").

Smith v. Our Lady of the Lake Hosp., 93-2512, p. 27 (La.7/5/94); 639 So.2d 730, 751.

*657 As for the standard of review applied to this matter and whether issues of material facts exist, "[a]ppellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180, 1183.
In the case sub judice the trial court dismissed that portion of Plaintiff's claim against Defendant, Dr. Nagem, relating to the issue of informed consent. The trial court found, that, insofar as Plaintiff's claim that she was not adequately informed of the risks inherent in the procedures she was to undergo, Dr. Nagem had made a prima facie case that no genuine issues of material fact existed and that Ms. Leger had failed to "produce factual support sufficient to establish that [she would] be able to satisfy [her] evidentiary burden of proof at trial." La.Code Civ.P. art. 966(C)(2).
La.R.S. 40:1299.40(A)(1)(emphasis added) states:
A. (1) Notwithstanding any other law to the contrary, written consent to medical treatment means a consent in writing to any medical or surgical procedure or course of procedures which: sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.
In Cox v. Board of Adm'rs of Tulane Educational Fund, 97-2350, pp. 6-7 (La.App. 4 Cir. 7/1/98); 716 So.2d 441, 445, our brethren of the Fourth Circuit, with whom we agree, stated:
La.Rev.Stat. 40:1299.40 establishes a presumption of valid consent where a written consent is signed. This presumption may be rebutted if the plaintiff establishes (1) the existence of a material risk which the physician must disclose, (2) the physician failed to inform the patient of a material risk, (3) the material risk was realized, and (4) there is a causal connection between the failure to inform the patient of the risk and realization of the risk. Hondroulis v. Schuhmacher, 612 So.2d 859, 861 (La. App. 4th Cir.1992) (citing Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1989)).
The determination of a material risk is a two-step process. The first step is to define the existence and nature of the risk and the likelihood of its occurrence. "Some" expert testimony is necessary to establish the existence and nature of the risk and the likelihood of occurrence because only a physician or other qualified expert is capable of judging what risks exist and the likelihood of occurrence. The second prong of the materiality test is for the trier of fact to decide whether the probability of that type of harm is a risk which a reasonable patient would consider in deciding on treatment. The focus is on whether a reasonable person in the patient's position probably would attach significance to the specific risk. This determination of materiality does not require expert testimony.

Hondroulis v. Schuhmacher, 553 So.2d 398, 412 (La.1989).
In a trial claiming inadequate disclosure of risk information by a physician, *658 the patient must establish prima facie the essential elements of the cause of action: that the undisclosed risk actually occurred and, had the risk been disclosed, the treatment would have been avoided. Coscino v. Wolfley, 96-0702, p. 3 (La.App. 4 Cir. 6/4/97), 696 So.2d 257, 260, writs denied, 97-2317, 97-2539 (La.1/9/98), 705 So.2d 1100, 1102.
On appeal, Plaintiff argues that she suffered spinal cord damage, that spinal cord damage was not listed as a risk, and therefore, following the rational of this court in Guidry v. Neu, 97-810 (La. App.12/10/97); 708 So.2d 740, Defendant's motion should have been denied. We do not agree. In Guidry, the plaintiff contracted endopthalmitis, a condition not listed on the surgical consent form, as a result of the procedure performed on her. In the case sub judice, Plaintiff sustained paraplegia as a result of the September 1993 aneurysm repair. The consent form, which she admitted was explained to her by Dr. Nagem and which she signed, specifically lists paraplegia as a known risk of the procedure. Additionally, R.S. 40:1299.40(A)(1)(emphasis added) states that a consent form will be presumed to be valid and effective if such form is
in writing ... [and] sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of ... paraplegia; [and] ... acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.
Ms. Leger admits discussing the form with Dr. Nagem. She further admits risks were discussed. She remembers the risks being presented as five percent. Dr. Nagem stated, in deposition, that "I told her the same risk of paraplegia I give [...] every patient that I do this operation on, five to fifteen percent risk of paraplegia."
Ms. Leger argues that her "consent was induced by misrepresentation of material facts" in that she was not informed that there were more qualified doctors and hospitals better equipped to handle her surgery in Houston, Texas. We are not persuaded by this argument.
There is no evidence that Dr. Nagem was not qualified to do the surgery he undertook. If such had been the case and he had failed to disclose that fact then her argument would have merit.
Plaintiff claims that prolonged clamping time of her aorta during surgery is the cause of her paraplegia. She argues that because of the prolonged clamping time "[i]nstead of undergoing a surgical procedure with a 5% risk that `something could go wrong,' [she] received an operation with a virtual certainty of paralysis" and that she was neither informed of this almost certain outcome nor consented to such a procedure. Without commenting on the merits of the case in general, it is clear that Plaintiff is basing her informed consent claim on "knowledge after the fact." No surgeon can foresee what will happen during an operation. If he/she could, there would be no surgical malpractice cases, as all undesirable consequences would be avoided. A surgeon can only warn a patient of known possible risks, as was done in this case. If one of these known risks come to pass, then it is up to a judge or jury to decide if it was unavoidable or due to treatment which fell below the standard of care that the patient had a right to expect.
In sum, we find no lack of informed consent and that the trial court properly granted Defendant, Dr. Edmund Nagem's *659 Motion for Summary Judgment on this issue. All costs of this appeal are assessed against Plaintiff/Appellant, Mary Leger.
AFFIRMED.