825 So.2d 563 (2002)
James BAKER, et ux
v.
Jeffery Allen WILLIAMS, P.A.
No. 02-67.
Court of Appeal of Louisiana, Third Circuit.
August 28, 2002.
*564 Mesonie T. Halley, Jr., Pitre, Halley & Associates, Lake Charles, for James Baker, et ux.
Kurt S. Blakenship, Robert I. Baudouin, Blue Williams, L.L.P., Metairie, for Jeffery A. Williams.
Stanton E. Shuler, Jr., Leake & Anderson, L.L.P., New Orleans, for Spine Tech Surgical, Inc. & Sulzer Spine-Tech, Inc.
John A. Bivins, Harmon F. Roy, Roy, Bivins, Judice, Roberts & Waretelle, Lafayette, for Dr. Louis C. Blanda.
Court composed of NED E. DOUCET, JR., Chief Judge, JOHN D. SAUNDERS, and OSWALD A. DECUIR, Judges.
*565 DOUCET, Chief Judge.
This medical malpractice action involves three consolidated cases. Plaintiffs, James and Shirley Baker, individually and on behalf of their minor children Bobby Joe, Daniel James, and Caitlin Goldie Baker, appeal decisions of the district court granting Defendants, Dr. Louis C. Blanda's and his physician's assistant, Jeffery Allan Williams's, motions for summary judgment on the issue of informed consent. Also on appeal is a decision of the district court granting Defendants, Spine Tech Surgical, Inc.'s and Sulzer Spine-Tech, Inc.'s (referred to, collectively, as Spine Tech), exception of prescription. Because the allegations raised in all the cases are so closely interwoven, we will discuss all the actions in this opinion.
This case (02-67) has as its parties Plaintiffs, James and Shirley Baker, et al and Jeffery Allan Williams, P.A. as Defendant. We affirm the judgments of the trial court.

FACTS
Plaintiff, James Baker, was injured in a work-related accident on September 30, 1996. In the course of his medical care, on December 5, 1996, he sought treatment from Defendant, Dr. Louis C. Blanda, an orthopaedic surgeon. Dr. Blanda is assisted in his practice by Defendant, Jeffery Williams, a licensed Physician's Assistant (P.A.). Dr. Blanda recommended surgery.
The surgery was originally scheduled for January 1997, but, due to weather or travel difficulties, was postponed until March 5, 1997. On February 27, 1997, Mr. Baker went to Dr. Blanda's office where the upcoming surgery was discussed and a consent form signed. That consent form made no mention of the possible implantation of BAK cages to assist in stabilizing Mr. Baker's spine. The morning of the surgery, Dr. Blanda instructed Mr. Williams to have a second consent form executed by Mr. Baker. That consent form specifically provided for the possible use of BAK cages.
Dr. Blanda's discharge summary indicates that Mr. Baker underwent a "Lumbar laminectomy and decompression [at L5/S1] with interbody fusion using BAK cages and fusion performed with local bone graft." The operation was apparently routine, and Mr. Baker was discharged from Lafayette General Hospital on March 9, 1997.
One to two weeks later, Mr. Baker experienced dizziness and loss of consciousness which Mr. Baker described as a stroke. A few weeks later, Mr. Baker's symptoms in his back and legs began to worsen. He was eventually diagnosed with "failed back" syndrome, i.e., for some unknown reason the fusion was unsuccessful. The suits which make up this action were filed following an unfavorable finding (to Mr. Baker) by a medical review panel. Named as Defendants were Jeffery A. Williams, P.A., in suit 98-2377 (our number 02-67); Spine Tech, in suit 98-5580 (our number 02-68); and Dr. Louis C. Blanda and Lafayette General Hospital (correctly Lafayette General Medical Center and hereafter referred to as Lafayette General), in suit 2000-373 (our number 02-69). The suit against Mr. Williams was limited to allegations of lack of informed consent. The suit against Spine Tech alleged lack of consent to the use of the BAK cages and made claims under Louisiana's product liability laws. The third suit, which names Dr. Louis Blanda and Lafayette General as Defendants, alleged lack of consent to a fusion and implantation of the BAK cages, misuse of an experimental device, and deviation from an acceptable standard of care. Louisiana Workers' Compensation Corporation intervened in all three suits seeking subrogation for the workers' compensation *566 benefits paid to or on behalf of Mr. Baker.
All of the suits were dismissed by the trial court via motions for summary judgment except Spine Tech's suit which was dismissed via an exception of prescription. This appeal followed.

LAW
In Weeks v. Brown, 01-495, pp. 3-5 (La. App. 3 Cir. 10/3/01); 796 So.2d 839, 842-43, a panel of this court reviewed the law governing appellate review of summary judgments and the law applicable to medical malpractice cases:
"Appellate courts review summary judgment de novo, under the same criteria that govern the district court's consideration of whether summary judgment was proper." Guillory v. Dr. X, 96-85, p. 5 (La.App. 3 Cir. 8/28/96), 679 So.2d 1004, 1007 (citing Schroeder v. Bd. of Sup'rs of La. State Univ., 591 So.2d 342 (La.1991)). See also, Norwel Equip. Co. Ltd. P'ship v. Hardy, 00-00934 (La. App. 3 Cir. 12/6/00), 773 So.2d 905.
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends." La. Code Civ.P. art. 966(A)(2). In 1997, the legislature enacted La.Code Civ. P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This amendment, which closely parallels the language of Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. See MARAIST AND LEMMON, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Hardy v. *567 Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
Babin v. Winn-Dixie Louisiana, Inc., 00-0078, pp. 3-4 (La.6/30/00); 764 So.2d 37, 39-40.
In a medical malpractice action, La. R.S. 9:2794(A) provides that the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Thus, to maintain a cause of action for medical malpractice, a plaintiff must present evidence to establish the standard of care applicable, a breach of the standard by the defendant, and a causal connection between the breach and the injury. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94); 643 So.2d 1228.
Cases involving allegations of lack of informed consent form a specialized subsection of medical malpractice actions:
The plaintiff in a lack of informed consent case must prove not only that the physician failed to disclose all material information, but also that there was a causal relationship between the doctor's failure and the damages claimed by the patient. LaCaze [v. Collier, 434 So.2d 1039, 1048 (La.1983)], 434 So.2d at 1048. Otherwise, the doctor's conduct, however wrongful, is legally inconsequential. Id.

There are two aspects to the proof of causation in a lack of informed consent case. First, the plaintiff must prove, as in any other tort action, that the defendant's breach of duty was a cause-infact of the claimed damages or, viewed conversely, that the defendant's proper performance of his or her duty would have prevented the damages. Second, the plaintiff must further prove that a reasonable patient in the plaintiffs position would not have consented to the treatment or procedure, had the material information and risks been disclosed. LaCaze, 434 So.2d at 1048; Hondroulis [v. Schuhmacher, 553 So.2d 398 (La. 1988) ], 553 So.2d at 412; Canterbury v. Spence, 464 F.2d 772, 790 (D.C.Cir. 1972). Causation is established only if adequate disclosure reasonably would be expected to have caused a reasonable person to decline treatment because of the disclosure of the risk or danger that resulted in the injury. Canterbury, 464 F.2d at 791. Although the patient has the absolute right, for whatever reason, to prevent unauthorized intrusions and treatments, he or she can only recover damages for those intrusions in which consent would have been reasonably *568 withheld if the patient had been adequately informed. LaCaze, 434 So.2d at 1049.
Lugenbuhl v. Dowling, 96-1575, p. 12 (La.10/10/97); 701 So.2d 447, 454. The second requirement discussed above is an objective standard not dependent on the self-serving testimony of the plaintiff. The objective standard was adopted by the supreme court "[b]ecause of the likelihood of a patient's bias in testifying in hindsight on this hypothetical matter." Hondroulis, 553 So.2d at 412.

DISCUSSION

SPINE TECH'S EXCEPTION OF PRESCRIPTION
Mr. Baker was operated on March 5, 1997. The next day he discovered that BAK cages, manufactured by Spine Tech, had been implanted in his back. The Bakers' suit against Spine Tech was filed November 23, 1998; thus, the suit was prescribed on its face. Mr. Baker argues that he did not know that Spine Tech was the manufacturer of the BAK cages until November 24, 1997, when he inspected the LGMC records. This may be true; however, the consent form he signed on the morning of his surgery specifically mentions the BAK cages. Further, by his own admission, he found out the following day that implants had been utilized in his surgery. He cannot, now, seek to benefit from his failure to investigate.
The doctrine of prescription protects defendants from having to defend against stale claims by requiring plaintiffs to file suit in a court of competent jurisdiction and venue in a timely manner. Generally, the party claiming that a claim has prescribed has the burden of proving prescription; however, if the claim appears to have prescribed on the face of the petition, the plaintiff has the burden of proving an interruption of prescription. Furthermore, if solidary liability is alleged as the reason for the interruption, the plaintiff bears the burden of proving the solidary liability. Younger v. Marshall Indus., Inc., 618 So.2d 866 (La.1993).
Egle v. Egle, 01-927, p. 3 (La.App. 3 Cir. 2/6/02); 817 So.2d 136, 139.
Plaintiff has failed to bring proof of an interruption of prescription. Mr. Baker argues that prescription did not begin to run until he discovered the harm done by the Spine Tech device. He alleges that Spine Tech employees had improperly taught Dr. Blanda that it was permissible to use bone from the surgical site rather than bone harvested from the hip to pack the BAK cages and that those instructions, and the use of spinal bone to pack the inserts caused the fusion to fail. While Spine Tech literature supports the allegation that it was permissible to use bone from the incision site to pack the BAK cages, we find nothing in the record to support the allegation that the use of spinal bone cased the fusion to fail.
Spine Tech answered the Plaintiffs' appeal arguing that, even if the trial court's ruling on its exception of prescription was erroneous, that its motion for summary judgment was well founded and should have been sustained. If, arguendo, we consider the trial court's ruling on the exception of prescription to be erroneous, we find Spine Tech's motion well founded. All the medical evidence and testimony establish that the BAK cages did not move or break and that the failure of the fusion is of unknown origin. As Dr. Clark Gunderson stated, some people "don't get well from back surgery for various causes." He further stated that he did not attribute Mr. Baker's failed back syndrome to the BAK cages.
*569 Thus, we find Plaintiffs' suit against Spine Tech was properly dismissed.

DISMISSAL OF DR. BLANDA
Plaintiffs' claims against Dr. Louis Blanda arise out of allegations of lack of informed consent and deviation below the accepted standard of medical care.
In this case we also have an allegation that Mr. Baker did not consent to the procedure performed. It is well settled that when a patient signs a consent form there is a presumption that the consent is valid. We find the facts in this case very similar to the facts in Larche v. Rodriguez, 00-881, pp. 2-3 (La.App. 4 Cir. 5/17/00); 765 So.2d 388, 389-90, writ denied, 00-1817 (La.9/22/00); 768 So.2d 1290, wherein the court explained:
Essentially, Larche alleges that Rodriguez performed a procedure to which Larche had not consented.
. . . .
LSA-R.S. 40:1299.40 establishes a presumption of valid consent when a written consent is signed. Cox v. Board of Administrators of Tulane Educational Fund, 97-2350 (La.App. 4 Cir. 7/1/98); 716 So.2d 441, 445. The presumption may be rebutted if the plaintiff establishes (1) the existence of a material risk which the physician must disclose; (2) the physician failed to inform the patient of a material risk, (3) the material risk was realized, and (4) there is a causal connection between the failure to inform the patient of the risk and the realization of the risk. Id.

. . . .
Larche signed a written consent to the procedure, and that consent is presumed to be valid. He offered no evidence to rebut that presumption.
The same holds true here. Mr. Baker signed two consent forms. Both list a "possible fusion" as a procedure being considered, one of the procedures to which Mr. Baker's consent was being solicited, and numerous possible adverse outcomes. The second consent form clearly stated that BAK cages might be used. Additionally, there is the pre-certification letter from Mr. Baker's insurer approving a fusion using BAK cages. Mr. Baker brought forth no evidence to rebut the presumption that his consent was valid.
As to Mr. Baker's allegation that Dr. Blanda's treatment fell below the accepted standard of care, we find nothing to support this allegation. We do find the deposition of Dr. Blanda, which states that he talked with Mr. Baker and explained the proposed procedures to him. We also find the deposition of Dr. Clark Gunderson which states "I don't know of anything that was caused by the BAK cages" and that Plaintiff's complaints are a known risk of back surgery. He went on to state that Plaintiff's "stroke," approximately 13 days after his operation, had nothing to do with the surgery.
The record also establishes that the BAK cages were approved by the FDA at the time of Plaintiff's surgery; that Dr. Blanda had been trained by Spine Tech in the proper use of BAK cages; and that Spine Tech's professional service representative, Kevin Higgins, never touched Mr. Baker nor advised Dr. Blanda regarding the conduct of Plaintiff's surgery. Mr. Higgins was at the hospital to deliver the BAK cages and to provide the surgical instrument necessary to implant the cages.
In sum, we find nothing in the record that would raise a genuine issue of material fact, and like the trial court, conclude that Dr. Bland was entitled to summary judgment as a matter of law.

*570 DISMISSAL OF JEFFERY ALLEN WILLIAMS, P.A.
The duties of a physician's assistant are set out in La.R.S. 37:1360.31 as follows:
A. (1) A physician assistant performs medical services when such services are rendered under the supervision of a supervising physician. A physician assistant may have multiple supervising physicians in no more than five medical specialties or subspecialties, provided all of the physician assistant's supervising physicians are properly registered with the board in accordance with the provisions of this Part. A physician assistant may perform those duties and responsibilities that are delegated to him by his supervising physician. A physician assistant is considered to be and is deemed the agent of his supervising physician in the performance of all practice-related activities, including but not limited to assisting in surgery and the ordering of diagnostic and other medical services. A physician assistant shall not practice without supervision except in life-threatening emergencies and in emergency situations such as man-made and natural disaster relief efforts.
(2) A physician assistant may inject local anesthetic agents subcutaneously, including digital blocks or apply topical anesthetic agents when delegated to do so by a supervising physician. However, nothing in this Part shall otherwise permit a physician assistant to administer local anesthetics perineurally, pericurally, epidurally, intrathecally, or intravenously unless such physician assistant is a certified registered nurse anesthetist and meets the requirements in R.S. 37:930.
B. The practice of a physician assistant shall include the performance of medical services within the scope of his education, training, and experience, which are delegated by the supervising physician. Medical services rendered by a physician assistant may include but are not limited to:
(1) Obtaining patient histories and performing physical examinations.
(2) Ordering or performing diagnostic procedures as delegated by the supervising physician.
(3) Developing and implementing a treatment plan in accordance with written clinical practice guidelines and protocols set forth by the supervising physician.
(4) Monitoring the effectiveness of therapeutic intervention.
(5) Suturing wounds as delegated by the supervising physician.
(6) Offering counseling and education to meet patient needs.
(7) Making appropriate referrals.
C. The activities listed above may be performed in any setting authorized by the supervising physician including: clinics, hospitals, ambulatory surgical centers, patient homes, nursing homes, other institutional settings, and health manpower shortage areas.
Those duties do not specifically include the obtaining of informed consent from a patient.
It is well settled that under La.R.S. 40:1299.40 it is the duty of the doctor performing a medical procedure to obtain informed consent from the patient. Larche, 00-881, 765 So.2d 388. Mr. Williams had no duty to Mr. Baker under La.R.S. 40:1299.40. This situation was very similar to that in Larche.
Dr. Buckley, not Dr. Rodriguez, obtained Larche's signature on the consent. The medical professional actually performing the procedure has a duty under LSA-R.S. 40:1299.40 to obtain informed *571 consent from the patient. Davis v. St. Charles General Hospital, (La. App. 4 Cir. 4/30/92); 598 So.2d 1244, 1245. Dr. Buckley actually participated in Larche's surgery. Moreover, he was acting at the direction of Dr. Rodriguez. For these reasons, we see no reason to deny Dr. Rodriguez the benefits of the presumption. Larche signed a written consent form, identifying the procedure.... Not only does the plain language of the identified procedure include the procedure actually performed, but every orthopedic surgeon whose testimony was included in the writ application and presented to the trial court stated that the procedure identified on the signed consent form includes a triple arthrodesis, the procedure actually performed.
Id. at 2-3; 389.
Mr. Williams was acting as an agent for Dr. Blanda. Dr. Blanda, as the principal, was responsible for the actions of his agent. However, at the time Mr. Williams' motion for summary judgment was heard, Dr. Blanda had already been dismissed as a defendant. Since Dr. Blanda had been absolved of liability, it follows that his agent, Mr. Williams, was also without liability.[1]
Plaintiff also argues the trial court erred in not considering the affidavit of Dr. Aldo Rosemblat. First, the said affidavit addressed Dr. Blanda's use of the BAK cages, not the issue of informed consent. Second, the affidavit was executed September 5, 2001, more than two months after Dr. Blanda had been dismissed from the suit. Hence, the trial judge did not err in failing to consider this affidavit.
For the preceding reasons and for the reasons discussed under the dismissal of Dr. Blanda regarding the presumed validity of signed consents, infra, we find nothing in the record that would raise a genuine issue of material fact, and like the trial court, conclude that Mr. Williams, too, was entitled to summary judgment as a matter of law.
Accordingly, for the reasons stated, the judgment of the trial court dismissing Plaintiff's suit against Jeffery Allen Williams, P.A. is affirmed. All costs of this appeal are assessed against Plaintiff-Appellant, James Baker.
AFFIRMED.
NOTES
[1] For a detailed discussion of agency, see Cartinez v. Reliable Amusement Co., Inc., 99-333, (La.App. 3 Cir. 11/3/99); 746 So.2d 246, 250-51, writ denied, 99-3404 (La.2/4/00); 754 So.2d 235.