NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1025


KACEY RYDER

VERSUS

DR. GARY MANUEL


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 249,304
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and Shannon J. Gremillion, Judges.


AFFIRMED.


Lionel H. Sutton  III
935 Gravier Street, Suite 1910
New Orleans, LA 70112
(504) 592-3230
COUNSEL FOR PLAINTIFF/APPELLANT:
    Kacey Ryder

**Eugene J. Sues**
**Gold, Weems, Bruser, Sues & Rundell**
**2001 MacArthur Drive**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Dr. Gary Manuel**

**PETERS, J.**

Kacey Ryder brought this medical malpractice suit against Dr. Gary Manuel for damages she sustained in a surgical procedure he performed. The trial court granted Dr. Manuel summary judgment dismissing her claims against him, and she appeals this judgment. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

Ms. Ryder came under the professional care of Dr. Manuel, an Alexandria, Louisiana physician specializing in obstetrics and gynecology, for complaints of chronic pelvic pain. After an ultrasound of the pelvis returned negative results, Dr. Manuel suspected that Ms. Ryder suffered from endometriosis and recommended a diagnostic laparoscopy to confirm or discount his suspicions.

On April 18, 2011, or the day before the scheduled procedure, Ms. Ryder appeared at the Central Louisiana Surgical Hospital (Surgical Hospital) and completed the pre-surgery paperwork. Included among the papers she signed that day was the informed consent form at issue in this litigation.

During the April 19, 2011 procedure performed at the Surgical Hospital, Dr. Manuel punctured one or more of Ms. Ryder's blood vessels. When this was discovered, he immediately terminated the laparoscopy, consulted with his partner, Dr. Joel Hall, also an Alexandria, Louisiana obstetrics and gynecology physician, and with Dr. Meyer Kaplan, an Alexandria, Louisiana general surgeon. Dr. Manuel then converted the procedure to a laparotomy,[1] sutured the punctured

---

[1] The difference between the two procedures is incision size. A laparotomy is a surgical procedure involving a large incision through the abdominal wall to gain access into the abdominal cavity. A laparoscopy is an operation performed in the abdomen or pelvis through small incisions (usually 0.5–1.5 cm) with the aid of a camera. It can either be used to inspect and diagnose a condition or to perform surgery.

vessels, and transferred Ms. Ryder to the recovery room. At the time, Ms. Ryder appeared to be stable.

Later that day, a Surgical Hospital anesthesiologist contacted Dr. Manuel and informed the doctor that Ms. Ryder's condition was decompensating. Dr. Manuel returned Ms. Ryder to the Surgical Hospital operating room, where he performed a second laparotomy and discovered a large amount of blood in Ms. Ryder's peritoneal cavity. He consulted again with Dr. Hall and Dr. Kaplan, as well as Dr. Gary Jones, a vascular surgeon. Dr. Jones then took over the procedure, identified a puncture in the right iliac vein, placed a suture, and irrigated the abdomen. Dr. Manuel then caused Ms. Ryder to be transferred to the intensive care unit of Rapides Regional Medical Center in Alexandria, Louisiana, where she remained until April 29, 2011.

On March 15, 2012, Ms. Ryder filed a complaint with the Louisiana Patient's Compensation Fund asserting that Dr. Manuel had deviated from the standard of care in his treatment of her and had not obtained her informed consent for the procedure. On November 18, 2013, the medical review panel rejected the complaint with written reasons. Ms. Ryder filed suit against Dr. Manuel on February 3, 2014, repeating her assertions to the medical review panel.

After issue was joined in the litigation, Dr. Manuel filed the motion for summary judgment now before us. In this April 14, 2014 motion, Dr. Manuel asserted that Ms. Ryder could not meet her burden of proving that the applicable standard of care was breached or that the informed consent was not proper. In support of the motion, Dr. Manuel submitted a memorandum and the medical review panel opinion. In response to this motion, Ms. Ryder filed an opposition to which she attached the consent form, medical records, photographs, and her own affidavit.

After a June 16, 2014 hearing, the trial court granted the summary judgment and dismissed Ms. Ryder's claims against Dr. Manuel. In its oral reasons for judgment, the trial court concluded:

> I think at the end of the day, my initial impression was there had to be expert evidence regarding . . . the failure to check this abdominal incision and operation to correct the injury. I think as to whether that's a material risk and I think the failure to have that expert evidence merits the court in granting the motion for summary judgment.

The trial court executed a judgment granting the summary judgment and dismissing Ms. Ryder's claims on June 23, 2014, and thereafter Ms. Ryder perfected this appeal. In her appeal, she asserts three assignments of error:

1. The trial court erred in finding that the consent form met the requirements of LA-R.S. 40:1299.40.

2. The trial court erred in finding that Kacey Ryder consented to the subsequent surgeries.

3. The trial court erred in granting the motion for summary judgment.

## OPINION

### *Assignment of Error Number One*

In her first assignment of error, Ms. Ryder contends that the trial court erred in finding that the consent form met the requirements of La.R.S. 40:1299.40.[2] On April 18, 2011, La.R.S. 40:1299.40(A)(1) provided in pertinent part:

> A. (1) Notwithstanding any other law to the contrary, written consent to medical treatment means a handwritten consent to any medical or surgical procedure or course of procedures which: sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been

---

[2] Louisiana Revised Statutes 40:1299.40 was amended and reenacted by 2012 La. Acts No. 759, effective June 12, 2012, to consist of R.S. 40:1299.39.5 to R.S. 40:1299.39.7, but was in full force and effect at the time Ms. Ryder executed the consent form. The general subject matter of the act remains unchanged.

3

made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is signed by the patient for whom the procedure is to be performed, or if the patient for any reasons lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.

The consent form signed by Ms. Ryder begins with the following statement:

Louisiana [R]evised Statute 40:1299.40A requires that your physician obtain your informed consent to all medical and surgical treatment. What you are being asked to sign is a confirmation that your physician had discussed the nature, purpose, prospects for success and risks of, and the alternatives to, the proposed medical or surgical treatment. You are also being asked to sign a confirmation that you have been given an opportunity to answer whatever questions you had and that your questions have been answered in a satisfactory manner. Please read the form carefully. Ask your physician about anything you do not understand. He or she will be pleased to explain.

This language is followed by the statement that Ms. Ryder was being offered a diagnostic laparoscopy for her pelvic pain and that "the nature and purpose of the procedure is [sic] look into the pelvis through a scope to determine if there is any pelvic pathology and render treatment if indicated[.]"

Next, the form lists thirteen specific potential risks of the procedure with the following lead-in statement to the listing:[3]

I understand that medicine is not an exact science and that complications do occur. I confirm that I have been given no guarantee or assurance by the physician whose name appears below or by anyone else as to the results that may be obtained by treatment. The following risks known to be associated with this treatment and with any associated anesthetic, have been explained to me.

---

[3] The twelve of the thirteen risks associated with the procedure include death; brain damage; paralysis from the neck down (quadriplegia); paralysis from the waist down (paraplegia); loss or loss of function of an arm or leg; disfigurement, including disfiguring scars; puncture of bowel or blood vessel; abdominal infection and complications of infection; abdominal incision and operation to correct injury; injury to bladder; injury to ureter; and possible air embolus. The thirteenth risk is listed as "Loss or loss of function of the following organs:[,]" but does not define the organs at risk.

The second page of the form explains that there is no alternative to the procedure and includes the following acknowledgment and authorization language:

> I acknowledge that I have read and understand this consent form (or that it has been read to me), that I understand the information contained in it, including all of the medical terminology, about which I have asked if unsure; that I have been given an adequate opportunity to ask whatever questions I had about the treatment; that all of my questions about the treatment have been answered by my physician in a satisfactory manner; and that I understand the nature and purpose of the treatment, its risk, and the alternatives.

> I hereby authorize and direct Dr. Manuel and/or his associates or assistants of his or her choice, to perform, Abdominal Endoscopy (Diagnostic Laparoscopy) on myself. I further authorize and direct him or her to perform any other procedure with the exception of _____ which in his or her judgment is advisable for my well-being, and to provide such additional services as he or she may deem appropriate, including, but not limited to, the administration of any anesthetic agent and the disposal of removed tissue.

Finally, at the bottom of the second page is a signature line for Ms. Ryder as well as one for a witness to the signature and the physician. All three signature lines are executed.

We find that the consent form meets the requirements of La.R.S. 40:1299.40. Thus, we find no merit in Ms. Ryder's first assignment of error.

### Assignment of Error Numbers Two and Three

In her second assignment of error, Ms. Ryder asserts that the trial court erred in finding that she consented to the subsequent surgeries, and in her third assignment of error, she asserts that the trial court erred in granting summary judgment in favor of Dr. Manuel. Since both of these assignments of error address the correctness of the summary judgment itself, we will consider them together.

It is well-settled that "[a]ppellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755. Louisiana Code of

Civil Procedure Article 966 governs summary judgment proceedings and provides a goal of the "just, speedy, and inexpensive determination of every action except those disallowed by Article 969." La.Code Civ.P. art. 966(A)(2).

The trial court is to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2). The burden of proof applicable to a motion for summary judgment is set forth in La.Code Civ.P. art. 966(C)(2), which reads as follows:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material of fact.

Because Dr. Manuel does not have the burden of proof at trial, he need only "point out to the court that there is an absence of factual support for one or more elements essential to" Ms. Ryder's claims against him. *Id.* Dr. Manuel sought to satisfy this burden by introducing the opinion of the medical review panel, which reads in pertinent part as follows:

> Claimant herein contends that defendant, Dr. Gary Manuel, breached the applicable standard of care in the following respects: performing a procedure so as to cause multiple punctures of multiple vessels; performing a procedure for which he lacked the appropriate qualification and knowledge; failing to obtain an appropriate informed consent for the procedures performed, specifically, laparotomy, abdominal incision or additional operations; and failing to obtain consent which adequately disclosed risk of an abdominal incision and operation to correct injury.

6

After careful review of the evidence submitted for our review, we find that the actions of the defendant herein, Dr. Gary Manuel, did not constitute a deviation from the applicable standard of care. The punctured veins were recognized complications of the procedure of which the patient executed an informed consent. The consent form, while unusual and less than optimal, was more than adequate to address the complication, as well as the remedial steps taken. Further, review of the record indicates that Dr. Manuel did have a consent discussion with the patient and her mother on March 3, 2011. When the complication was noted, Dr. Manuel took prompt and appropriate action to rectify the situation, including converting to a laparotomy and obtaining appropriate consults. Lastly, the physician was clearly qualified to perform the procedure, and notably, was board certified in his field, and calling in additional surgical support was the appropriate action to take. The remaining allegations of breach by the claimant as against this defendant are not supported by the evidence, and in all respects, the care rendered by this physician to this patient was appropriate.

In order to prevail on a claim of lack of informed consent, Ms. Ryder must prove (1) the existence of a material risk unknown to her; (2) a failure on the part of Dr. Manuel to disclose the risk to her; (3) disclosure of the risk would have led a reasonable patient in Ms. Ryder's position to reject the medical procedure or to choose a different course of treatment; and (4) an injury caused to Ms. Ryder as a result of the failure to disclose the material risk. *Hondroulis v. Schuhmacher*, 553 So.2d 398 (La.1988)

It is well settled in Louisiana law that when a patient signs a consent form, there is a presumption that the consent is valid. *Baker v. Williams*, 02-67 (La.App. 3 Cir. 8/28/02), 825 So.2d 563, *writ denied,* 02-2447 (La. 11/22/02), 829 So.2d 1055. In order to rebut the presumption of consent, Ms. Ryder must show misrepresentation of materiality on the part of Dr. Manuel. La.R.S 40:1299.39.5. In explaining this burden, the supreme court in *Hondroulis*, 553 So.2d at 412 (emphasis added) (citations omitted), stated:

> The determination of materiality is a two-step process. The first step is to define the existence and nature of the risk and the likelihood of its occurrence. *"Some" expert testimony is necessary to*

7

*establish this aspect of materiality because only a physician or other qualified expert is capable of judging what risk exists and the likelihood of occurrence.* The second prong of the materiality test is for the trier of fact to decide whether the probability of that type harm is a risk that a reasonable patient would consider in deciding on treatment. The focus is on whether a reasonable person in the patient's position probably would attach significance to the specific risk. This determination of materiality does not require expert testimony.

There must be a causal relationship between the doctor's failure to disclose material information and material risk of damage to the patient. Because of the likelihood of a patient's bias in testifying in hindsight on this hypothetical matter, this court and others have adopted an objective standard of causation: whether a reasonable patient in the plaintiff's position would have consented to the treatment or procedure had the material information and risks been disclosed.

Furthermore, in the event of an emergent situation, the supreme court in

*Hondroulis* stated:

[A] doctor is not required to disclose material risks or information when a genuine emergency arises because the patient is unconscious or otherwise incapable of consenting, and harm from a failure to treat is imminent and outweighs harm threatened by the proposed treatment

*Id.*

The laparotomy was an emergent procedure, inherent within the consent given to repair the risk of a punctured blood vessel and save Ms. Ryder's life. Ms. Ryder signed a consent form authorizing Dr. Manuel to perform any other procedure that, within his judgment, was advisable for her well-being. Performing a laparotomy to stop a life-threatening bleed was certainly advisable in this case to which any reasonable person would consent.

While the consent form does not specifically address the possibility of a laparotomy procedure, it specifically lists the puncture of a blood vessel as a risk associated with the laparoscopy procedure, and it further authorizes Dr. Manuel "to perform any other procedure . . . which in [his] judgment is advisable for [her] well-being." The medical review panel found that the informed consent form

signed by Ms. Ryder was more than adequate to address the complication, as well as the remedial steps taken; that Dr. Manuel had a consent discussion with Ms. Ryder and her mother on March 3, 2011; and that punctured veins were recognized complications of the procedure of which Ms. Ryder executed an informed consent. The trial court, at the hearing for summary judgment, found that there had to be expert evidence regarding the remedial steps taken and whether or not they were a material risk. Without an expert to establish whether the risk of a laparotomy was material, Ms. Ryder could not prevail on her claim of lack of informed consent. Viewing the record in its entirety, we find that it was reasonable for the trial court to conclude that Ms. Ryder needed to produce expert testimony to rebut the opinion of the medical review panel finding that the informed consent given by Ms. Ryder was adequate under the circumstances. Her own self-serving affidavit is not sufficient due to a patient's likelihood of bias in testifying in hindsight. Accordingly, we find no merit in Ms. Ryder's second assignment of error.

Finally, Ms. Ryder asserts that there remain genuine issues of material fact with regard to the issue of whether Dr. Manuel breached the applicable standard of care in his treatment of her. We first note that the opinion of the medical review panel is sufficient evidence to present a prima facie case on behalf of Dr. Manuel and to shift the burden of proof to Ms. Ryder. *Williams v. Mem'l Med. Ctr.*, 03-1806 (La.App. 4 Cir. 3/17/04), 870 So.2d 1044, *writ denied*, 04-963 (La. 6/4/04), 876 So.2d 93. In attempting to meet her burden, Ms. Ryder presented no expert evidence to rebut the unanimous medical review panel opinion in favor of Dr. Manuel, and as a result, summary judgment is appropriate in this case.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment granting the motion for summary judgment in favor of Dr. Gary Manuel and dismissing the

9

claims of Kacey Ryder.  We assess all costs of this appeal to Kacey Ryder.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.