| MARIA R. GANOZA | * | NO. 2023-CA-0392 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| JAMES M. LABORDE, M.D. | * | |
| AND INTERIM LSU PUBLIC | | FOURTH CIRCUIT |
| HOSPITAL F/K/A MEDICAL | * | |
| CENTER OF LOUISIANA AT | | STATE OF LOUISIANA |
| NEW ORLEANS | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-10418, DIVISION "F-14"
Honorable Jennifer M Medley,
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Rosemary Ledet)

J. Alexander Watkins
ATTORNEY AT LAW
39 Newcomb Blvd.
New Orleans, LA 70118

     COUNSEL FOR PLAINTIFF/APPELLEE

Jeff Landry, ATTORNEY GENERAL
Phyllis E. Glazer, ASSISTANT ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third Street, 3rd Floor
Baton Rouge, LA 70802

Renee C. McKay, ASSISTANT ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1450 Poydras Street, Suite 900
New Orleans, LA 70112

     COUNSEL FOR DEFENDANTS/APPELLANTS

**APPEAL CONVERTED TO SUPERVISORY WRIT; WRIT
GRANTED; RELIEF DENIED**
**December 5, 2023**

*RML*

*DLD*

*JCL*

This is a medical malpractice case. Plaintiff—Maria Ganoza—asserts an informed consent claim against Defendants—State of Louisiana, through the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, on behalf of LSU Health Sciences Center, LSU Health Care Services Division, Interim LSU Public Hospital; and James M. Laborde, M.D. (collectively "Dr. Laborde").[1] From the trial court's judgment denying his partial summary judgment motion on the informed consent claim, Dr. Laborde appeals. For the reasons that follow, we convert Dr. Laborde's appeal to a supervisory writ, grant his writ, but deny his request for relief.

## FACTUAL AND PROCEDURAL BACKGROUND

After treating with a podiatrist for a bilateral bunions ailment, Ms. Ganoza was referred to Dr. Laborde—an orthopedic surgeon at Interim LSU Public Hospital, in New Orleans, Louisiana—for bunions surgery.[2] On April 4, 2011, Ms.

---

[1] The correct defendant to name in a suit against the State arising from the Interim LSU Public Hospital is "the State of Louisiana, through the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, on behalf of the Interim LSU Public Hospital." *Hankton v. State*, 20-00462, p. 2 (La. 12/1/20), 315 So.3d 1278, 1281.

[2] As Dr. Laborde points out in his appellant brief, "[a] bunion is deformity of the bones, which causes inflammation of the joint at the base of the big toe or at the base of the little toe. Bunion surgery is done to reduce pain and correct the misalignment or deformity of the foot bones. https://orthoinfo.aaos.org/en/diseases - conditions/bunions/ (last visited 8/9/2023)."

1

Ganoza first presented to Dr. Laborde for a pre-operative clinic visit. After examining Ms. Ganoza, Dr. Laborde determined that she suffered not only from bilateral bunions, but also from other ailments—painful calluses and lower extremity tight tendons. Dr. Laborde further determined that the appropriate treatment for Ms. Ganoza's ailments included a bilateral bunionectomy and a tendon lengthening procedure.

At the same pre-operative clinic visit, Ms. Ganoza read and signed a consent form for the recommended surgical treatment. On the consent form, the surgical treatment was described as a bilateral bunionectomy with tendon lengthening calves and possible toes. Ms. Ganoza's condition was described as bunions, calluses and tight tendons bilateral. The purpose of the surgical treatment was described as improving alignment and pain. But the section of the consent form entitled "reasonable therapeutic alternatives and the risk association with such alternatives" was left blank.

About a week after Ms. Ganoza's pre-operative clinic visit, Dr. Laborde performed the surgery. According to Dr. Laborde, the surgery was without incident. According to Ms. Ganoza, she suffered from numerous complications following the surgery.

One year after the surgery, in April 2012, Ms. Ganoza filed a medical review panel ("MRP") complaint, with the Louisiana Division of Administration, pursuant to the Malpractice Liability for State Services Act ("MLSSA"), La. R.S. 40:1237.1, *et seq*.,[3] against Dr. Laborde. In her MRP complaint, Ms. Ganoza asserted claims of medical malpractice associated with the surgical procedures that Dr. Laborde

_____

[3] The MLSSA, La. R.S. 40:1237.1, *et seq*., applies here given this suit involves state defendants.

2

performed on her in April 2011. She averred that Dr. Laborde originally was authorized to treat only the bunions on her toes, but he chose instead during the procedure to sever her Achilles tendons in unnecessary surgery. Such unnecessary surgery, she averred, was performed to gain experimental data for a future publication on tendon-lengthening surgeries.

In August 2015, the MRP, composed of three orthopedic surgeons, rendered a unanimous opinion in Dr. Laborde's favor; the MRP's opinion was as follows:

1. The procedures were well described, not experimental, and based upon the provided medical records, the procedures were warranted based upon the operative surgeon's physical exam.

2. Consent was adequate including tendon lengthening and bilateral bunionectomy. Conservative methods had failed and she was referred from podiatry for a surgical consult. It was her choice to proceed with surgery or not.

3. An [Institutional Review Boards("IRB")][4] consent was not necessary as the procedure was not experimental and there was no evidence provided to indicate that she was a part of a study.

4. There is nothing in the record presented to the panel to review to indicate the hospital, and/or it's employees, deviated from the standard of care."

In 2015, Ms. Ganoza filed this suit, echoing the averments she made in her MRP complaint. Simply stated, she averred that Dr. Laborde performed an Achilles tendon lengthening surgery that was unnecessary and experimental.

Thereafter, four summary judgment motions were filed—one by Ms. Ganoza; three by Dr. Laborde. Dr. Laborde's first motion—a "no expert" motion—was filed in August 2016; this motion was continued and never ruled upon. Ms. Ganoza's motion was for a partial summary judgment on the informed

---

[4] An IRB is defined as "any board, committee, or other group formally designated by an institution to review, to approve the initiation of, and to conduct periodic review of, biomedical research involving human subjects. The primary purpose of such review is to assure the protection of the rights and welfare of the human subjects." 21 C.F.R. § 56.102.

consent issue; the trial court denied her motion in August 2017. In February 2020, Dr. Laborde filed his second summary judgment motion, seeking dismissal of all Ms. Ganoza's claims. This motion, like his first one, was a "no-expert" motion. The trial court granted Dr. Laborde's second motion in part as to the standard of care, but denied it in part as to the informed consent claim.[5]

Thereafter, Dr. Laborde filed a third summary judgment motion, seeking dismissal of Ms. Ganoza's remaining informed consent claim and her damage claims for lost wages, loss of earning capacity, and future medical expenses. In response, Ms. Ganoza filed a one-page opposition memorandum. In her opposition memorandum, she contended that Dr. Laborde's third summary judgment was virtually the same as his second one; and she "adopted, pled, re-alleged, and re-averred as if copied herein *in extenso*" her opposition memorandum, statement of contested facts, and exhibits that she had filed in March 2020 in response to the second motion (the "Bulk Exhibit"). In her opposition memorandum, she further stated that she was not making a lost wage claim or future medical costs claim; thus, she did not oppose a partial summary judgment on those damage claims. As

---

[5] On December 18, 2020, the trial court signed a judgment, which Ms. Ganoza's attorney prepared and submitted, denying Dr. Laborde's second summary judgment motion in total. Because of the contradiction between that judgment and the trial court's oral ruling at the summary judgment hearing, Dr. Laborde filed a motion seeking clarification and resolution of the judgments. After reviewing the transcript of the summary judgment hearing at which the trial court rendered its ruling, the motion to clarify was granted. The trial court entered a new judgment, signed November 5, 2021, which amended the prior judgment to conform with the actual oral ruling on the motion. It partially granted Dr. Laborde's motion and dismissed the breach of the standard of care claim. It also partially denied Dr. Laborde's motion as to the regarding informed consent claim. Ms. Ganoza sought supervisory review from this Court, and this Court denied her writ application. *Ganoza v. State of La.*, 21-0688 (La. App. 4 Cir. 12/20/21)(*unpub.*).

indicated in her opposition memorandum,[6] Ms. Ganoza, the day after she filed her opposition memorandum, filed a hard copy of the Bulk Exhibit into the record.

In ruling on the summary judgment motion, the trial court granted Dr. Laborde's motion to strike the Bulk Exhibit. Based on Ms. Ganoza's acquiescence,[7] the trial court granted a partial summary judgment dismissing three of her damage claims. But the trial court denied the summary judgment motion as to the informed consent claim. In so doing, the trial court provided the following written reasons for judgment:

> The allegations and facts raised by Plaintiff regarding Defendant Labordes' [sic] studies related to the propriety and effectiveness of surgical Achilles tendon lengthening in relation to the timing of Plaintiffs [sic] surgery, and the role that may have played on the Plaintiffs [sic] ability to give her informed consent creates a genuine issue of material fact reserved for the trier-of-fact. It is improper for this Court to weigh the evidence and make a credibility determination when ruling on a motion for summary judgment. As such, Defendants['] Motion is denied, in part, as it pertains to Plaintiff's claim for lack of informed consent.

The trial court certified its judgment as final for purposes of immediate appeal pursuant to La. C.C.P. art. 1915. This appeal followed.

*Appellate jurisdiction*

An appellate court has a duty to determine—even if the parties do not raise the jurisdictional issue—whether it has subject matter jurisdiction to entertain an appeal. *See Moulton v. Stewart Enters., Inc.*, 17-0243, 17-0244, p. 3 (La. App. 4 Cir. 8/3/17), 226 So.3d 569, 571 (citation omitted). "An appellate court cannot

---

[6] In her opposition memorandum, she stated that "[a] copy of the previously filed Memorandum in Opposition, Statement of Contested Facts and Exhibits will be provided to the Court by email and in paper form once the Court re-opens."

[7] Although Ms. Ganoza, in her opposition memorandum, only references two damage claims-- lost wage and future medical costs claim, it is undisputed that she acquiesced in dismissing three damage claims-- lost wages, loss of earning capacity, and future medical expenses.

determine the merits of an appeal unless its subject matter jurisdiction is properly invoked by a valid final judgment." *Id*. Here, the trial court's judgment is an "issue summary judgment" under La. C.C.P. art. 966(E). *See Chenet v. Colgate-Palmolive Co.*, 22-0666, p. 11 (La. App. 4 Cir. 2/1/23), 357 So.3d 479, 488, *writ denied*, 23-00309 (La. 4/25/23), 359 So.3d 978.

An "issue summary judgment" is appealable only if certified as final by the trial court pursuant to La. C.C.P. art. 1915. *Id.* But an appellate court is not bound by a trial court's certification; an appellate court is required to make its own determination of whether the "issue summary judgment" was certified correctly. *See S. Envtl. Mgmt. & Specialties, Inc. v. City of New Orleans*, 22-0018, p. 5 (La. App. 4 Cir. 5/11/22), 339 So.3d 1234, 1237 (observing that "[a]lthough the trial court certified the . . . partial summary judgment as final pursuant to La. C.C.P. art. 1915(B), that designation is not determinative of this court's jurisdiction").

Here, the trial court, in certifying the "issue summary judgment" as final, failed to provide explicit reasons. Dr. Laborde contends that the trial court's reasons are apparent—Ms. Ganoza agreed that her claims for lost wages, loss of earning capacity, and future medical expenses are not at issue. Likewise, in her answer to this appeal, Ms. Ganoza described her acquiescence to entry of the partial summary judgment as a "voluntary dismissal." Considering Ms. Ganoza's agreement to dismiss these claims, Dr. Laborde contends that there is no just reason for delaying entry of the final judgment dismissing those demands with prejudice. For these reasons, Dr. Laborde contends that the trial court correctly certified the partial summary judgment as final. This argument is unpersuasive.

Dr. Laborde is not questioning the part of the judgment in his favor—the dismissal, with Ms. Ganoza's acquiescence, of three of her damage claims. Indeed,

a party generally cannot appeal a part of a judgment in its favor. *Succession of Foster*, 240 La. 269, 275, 122 So.2d 96 (1960) (observing that "appellant is without right to appeal from that portion of the judgment which is in her favor"); *see also* La. C.C.P. art. 2085.[8]

The only part of the judgment that Dr. Laborde is challenging is the denial of his summary judgment motion on the informed consent issue. A trial court's judgment denying a summary judgment motion, by statute, is not appealable. *See* La. C.C.P. art. 968 (providing that "[a]n appeal does not lie from the court's refusal to render any judgment on the pleading or summary judgment"); *see also LaBarre v. Texas Brine Co., LLC*, 22-1221, pp. 6-7 (La. App. 1 Cir. 4/28/23), 2023 WL 3134906 (*unpub.*), *writ denied*, 23-00748 (La. 9/26/23), 370 So.3d 479 (explaining the interplay between La. C.C.P. art 968 and La. C.C.P. art. 1915). Given the non-appealable nature of a ruling denying a summary judgment motion, the trial court erred in certifying the "issue summary judgment" as a partial final judgment under La. C.C.P. art. 1915. The judgment before us is a non-final judgment.

In previous cases, this Court has exercised its discretion to convert an appeal of a non-final judgment into a supervisory writ application when the following two conditions were satisfied:

> (i) The motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs under Rule 4-3 of the Uniform Rules, Courts of Appeal.

---

[8] La. C.C.P. art. 2085 provides:

> An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment.

(ii) When the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court's decision would terminate the litigation.

*Lee v. Sapp*, 17-0490, pp. 4-5 (La. App. 4 Cir. 12/6/17), 234 So.3d 122, 126. Both conditions are satisfied here. We, thus, convert Dr. Laborde's appeal to a writ.

*Standard of Review and Summary Judgment Principles*

Appellate courts review the grant or denial of a summary judgment motion *de novo* using the identical criteria that trial courts use to determine whether summary judgment is proper. *See Planchard v. New Hotel Monteleone, LLC*, 21-00347, p. 2 (La. 12/10/21), 332 So.3d 623, 625 (citations omitted). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The mover bears the burden of proof. La. C.C.P. art. 966(D)(1). When the mover will not bear the burden of proof at trial, the mover need not negate all essential elements of the adverse party's claim. *Id*. Rather, the mover need only point out the absence of factual support for one or more elements of the adverse party's claim. The burden then shifts to the adverse party "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

Here, the parties present two issues—one evidentiary and one substantive. The evidentiary issue, raised in Ms. Ganoza's answer to the appeal, is whether the trial court erred in striking the Bulk Exhibit. The substantive issue, raised in Dr. Laborde's appeal, is whether the trial court erred in denying his summary judgment

motion given Ms. Ganoza failed to meet her burden of showing there is a genuine issue of material fact on the essential elements of her informed consent claim. We separately address each issue.

*Evidentiary Issue—Striking the Bulk Exhibit*

The trial court struck the Bulk Exhibit based on Dr. Laborde's objection. His objection was that such a bulk attachment was improper under La. C.C.P. art. 966(A)(4). We find Dr. Laborde's objection unfounded. The documents objected to—an *in globo* copy of a former opposition memorandum and its attachments—were filed into the record and were documents allowed under the law in effect at the time this summary judgment motion was filed, heard, and decided. At all those times, La. C.C.P art. 966 (A)(4) provided that "[t]he only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." [9] The documents that were objected to were a memorandum and the attachments thereto, which included Ms. Ganoza's affidavit and various depositions. The trial court, thus, erred in striking the Bulk Exhibit.

---

[9] The Legislature recently amended La. C.C.P. art. 966. *See* 2023 La. Acts No. 317, § 1 (eff. Aug. 1, 2023), and 2023 La. Acts No. 368, § 1 (eff. Aug. 1, 2023). The amendments included the addition of the following provision to La. C.C.P. art. 966:

> (b) Any document listed in Subsubparagraph (a) of this Subparagraph previously filed into the record of the cause may be specifically referenced and considered in support of or in opposition to a motion for summary judgment by listing with the motion or opposition the document by title and date of filing. The party shall concurrently with the filing of the motion or opposition furnish to the court and the opposing party a copy of the entire document with the pertinent part designated and the filing information.

Because we find the Bulk Exhibit was improperly excluded under the law in effect at the time of the summary judgment motion, we find it unnecessary to decide if the newly enacted amendments to La. C.C.P. art. 966, even if interpretive, can be retroactively applied.

*Genuine Issue of Material Fact on the Informed Consent Issue*

A genuine issue of fact is one as to which reasonable persons could disagree. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (citation omitted). If reasonable persons could reach only one conclusion, there is no need for trial on the issue; and the granting of summary judgment is appropriate. *Id.* A material fact is one that "might affect the outcome of the suit." *Id.* Whether a fact is material must be determined based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citation omitted).

The applicable substantive law here is the law governing informed consent claims, which is both statutory and jurisprudential. Louisiana courts have developed the following four-pronged test for establishing an informed consent claim:

1) The existence of a material risk unknown to the patient;

2) A failure to disclose a risk on the part of the physician;

3) That the disclosure of the risk would have led a reasonable patient in the patient's position to reject the medical procedure or choose another course of treatment; and

4) Injury.

*Brandt v. Engle*, 00-3416, p. 7, n.1 (La. 6/29/01) 791 So.2d 614, 619 (citations omitted). The Supreme Court, in *Brandt*, observed that for a plaintiff to establish the elements of an informed consent claim "some" expert testimony is required. The need for expert testimony, the Supreme Court explained, comes into play in defining the material risks that a physician is mandated to disclose.

"[A] risk is material when a reasonable person in what the doctor knows or should know to be the patient's position, would be likely to attach significance to

the risk or cluster of risks in deciding whether or not to forego the proposed therapy." *Hondroulis v. Schuhmacher*, 553 So.2d 398, 412 (La.1988) (on reh'g) (citing *LaCaze v. Collier*, 434 So.2d 1039, 1045-46 (La.1983)). Louisiana courts have developed the following two-step process for defining materiality:

> The first step is to define the existence and nature of the risk and the likelihood of its occurrence. "Some" expert testimony is necessary to establish this aspect of materiality because only a physician or other qualified expert is capable of judging what risk exists and the likelihood of occurrence. The second prong of the materiality test is for the trier of fact to decide whether the probability of that type harm is a risk which a reasonable patient would consider in deciding on treatment. The focus is on whether a reasonable person in the patient's position probably would attach significance to the specific risk. This determination of materiality does not require expert testimony.

*Hondroulis*, 553 So.2d at 412 (citations omitted).

"Encompassed in the definition of material risks is the concept that in order for a patient to make an informed, intelligent decision, he [or she] must be advised of any alternatives to the proposed procedure." *Kennedy v. St. Charles Gen. Hosp. Auxiliary*, 630 So.2d 888, 892 (La. App. 4th Cir. 1993). The requirement of disclosing alternatives to the proposed procedure, however, is limited to feasible alternatives. "[A]though a physician should inform a patient of alternatives that exist to the surgical procedure, a physician has no duty to disclose alternative treatments or procedures which are not accepted as feasible." *Reddick v. State*, 21-0197, p. 8 (La. App. 4 Cir. 9/29/21), 328 So.3d 504, 509 (internal citations and quotations omitted).

The requirement of disclosing feasible alternative treatments—referenced in the consent form Ms. Ganoza signed—is codified in the Louisiana informed

11

consent law. [10] As we observed in *Reddick*, the law in effect at the time of Ms. Ganoza's surgery—former La. R.S. 40:1299.39.63 (now La. R.S. 40:1299.39.6(P)(3))—provided, in pertinent part, that "reasonable therapeutic alternatives, and any associated risks, [must] be disclosed to the patient." 21-0197, p. 7, 328 So.3d at 509 (citing La. R.S. 40:1299.39.6(P)(3)). [11]

Based on the jurisprudence, a plaintiff-patient opposing a defendant-physician's supported summary judgment motion on an informed consent claim is required to produce only "some" expert testimony to address the issue of what risk existed in the plaintiff's case that was not disclosed and the likelihood of its occurrence. *McGrew v. Waguespack*, 15-1891 (La. App. 1 Cir. 6/3/16), 2016 WL 3132149 (*unpub.*).

Dr. Laborde's position is that this is a physician-supported summary judgment motion. He points out that, in support of his summary judgment motion, he submitted not only the presumptively valid consent form Ms. Ganoza signed, but also the unanimous MRP opinion authored by three orthopedic surgeons. Given this evidence, Dr. Laborde contends that he satisfied his prima facie burden—as the summary judgment movant—of proving the sufficiency of the consent. *See Jordan v. Cmty. Care Hosp.,* 19-0039 (La. App. 4 Cir. 7/24/19), 276 So.3d 564. He cites *Jordan* for the principle that "[t]he requirement of producing expert testimony is especially apt, when as here, the defendants have filed summary judgment motions and supported such motions with expert opinion

---

[10] The consent form Ms. Ganoza signed also stated that "Louisiana law requires us to tell you" about "[r]easonable therapeutic alternatives and material risks associated with such alternatives."

[11] La. R.S. 40:1299.39.6, which was in effect at the time of Ms. Ganoza's surgery, was re-designated as La. R.S. 40:1157.2 effective June 2, 2015. *See Reddick*, 21-0197, p. 8, n.3, 328 So.3d at 509. Both the prior provision and the new one mandate disclosure of reasonable therapeutic alternatives and risks associated with such alternatives.

evidence that their treatment met the applicable standard of care." 19-0039, p. 13, 276 So.3d at 577. Because Ms. Ganoza failed to offer any expert testimony to prove the insufficiency of the consent, Dr. Laborde contends that she failed to meet her burden of raising a genuine issue of material fact and that summary judgment should have been granted.

Dr. Laborde's reliance on the *Jordan* case is misplaced. The *Jordan* case, albeit a medical malpractice case, did not involve an informed consent claim. "Informed consent is a claim that can be separate from a medical malpractice claim." *Patterson v. Peterson*, 19-1604, p. 7 (La. App. 1 Cir. 8/3/20), 310 So.3d 185, 190 (citing *Lugenbuhl v. Dowling*, 96-1575, pp. 16-17 (La. 10/10/97), 701 So.2d 447, 456). The elements required to establish an informed consent claim, as the Supreme Court confirmed in *Brandt*, are different from the elements required for a medical malpractice claim.[12] Likewise, the requirement for expert testimony to establish an informed consent claim is different; as discussed elsewhere in this opinion, the jurisprudence has observed that only "some" expert testimony is required to establish an informed consent claim. *Hondroulis*, 553 So.2d at 412 (citations omitted).

---

[12] In *Jackson v. State Through Charity Hosp. of Louisiana at New Orleans*, 94-2090, p. 3 (La. App. 4 Cir. 5/16/95), 655 So.2d 795, 796, we observed:

> La.R.S. 9:2794 states, in pertinent part, that in a malpractice action based on the negligence of a physician, the plaintiff must prove by a preponderance of the evidence:
>
> 1) the standard of medical care for the medical specialty involved;
>
> 2) that the defendant breached the standard of care; and
>
> 3) that the plaintiff suffered injuries due to the breach of the standard of care.

Here, as Ms. Ganoza contends, the summary judgment record in this case contains "some" expert testimony establishing that a reasonable therapeutic alternative existed to the tendon lengthening procedure. Dr. Laborde and the three MRP members—all orthopedic surgeons—agreed that a reasonable therapeutic alternative to a bilateral tendon lengthening procedure is stretching. This expert testimony is sufficient to satisfy the first prong of the materiality test. As a result, this reasonable therapeutic alternative was required to be disclosed.

The other relevant evidence in this case is the consent form that Ms. Ganoza signed. As noted elsewhere in this opinion, the consent form had a section for "reasonable therapeutic alternatives," but that section was left blank. Nonetheless, oral consent can be sufficient. Hence, the dispositive issue is whether Dr. Laborde orally informed Ms. Ganoza of the reasonable therapeutic alternative of stretching.

A conflict exists between Dr. Laborde and Ms. Ganoza over what he orally disclosed to her. Although Dr. Laborde acknowledged in his deposition that he could not recall exactly what he told Ms. Ganoza, he testified that he routinely tells his patients that conservative measures—including stretching—are an alternative. Regardless, Dr. Laborde testified that he would not have been willing to perform the bilateral bunion procedure without performing the tendon lengthening procedure on Ms. Ganoza; he explained:

> "In other words, she can either have surgery or she cannot have surgery. That would be her alternatives—because I'm going to recommend what I think is the best surgery. And if she doesn't want that, she cannot have the surgery or go somewhere else. But I'm not going to do . . . a surgery on a patient that I don't think is going to work or is not the best thing for the patient."

Dr. Laborde further testified that Ms. Ganoza always had the option—up until the time of the surgery—of declining to have the surgery.

In contrast, Ms. Ganoza—whose primary language was Spanish and who was a runner (jogger) before the surgery—attested in her affidavit that Dr. Laborde never told her that stretching was a reasonable therapeutic alternative. According to Ms. Ganoza, Dr. Laborde was the first doctor to tell her that she had a tight Achilles tendons; and he never discussed stretching of her tendons with her. She further attested that Dr. Laborde never told her that he was going to surgically lengthen her Achilles tendons. She attested that she was always under the impression that she was only undergoing surgery to correct her bunions ailment—the ailment that she was referred to Dr. Laborde to correct.[13]

In sum, the record supports two findings. First, there is expert testimony establishing that a reasonable therapeutic alternative to the tendon lengthening procedure existed—stretching.[14] Second, there is conflicting evidence as to whether Dr. Laborde informed Ms. Ganoza of this reasonable therapeutic alternative. Taken together, these two findings establish that Dr. Laborde was not entitled to summary judgment on the informed consent issue. For this reason, the trial court did not err in denying summary judgment on the informed consent issue.

### DECREE

For the foregoing reasons, Dr. Laborde's appeal is converted to an

---

[13] Ms. Ganoza contends that most reasonable people would not proceed with having their Achilles tendons cut if they were informed stretching could avoid that procedure. She also contends that a reasonable person would not consent to same if informed that the physician suggesting that they undergo the surgery without first exhausting alternative treatment modalities was actively researching the effectiveness of same through human subjects research endeavors. Given our finding that the question regarding reasonably foreseeable alternatives precludes summary judgment, we do not reach this issue.

[14] *Cf. Reddick*, 21-0197, p. 9 (La. App. 4 Cir. 9/29/21), 328 So.3d 504, 510 (observing that "[t]he determination of whether ultrasound observation is a reasonable therapeutic alternative is a material fact essential to Ms. Reddick's causes of action" and finding summary judgment inappropriate); *Cox v. Bd. of Adm'rs of Tulane Educ. Fund*, 97-2350, pp. 6-9 (La. App. 4 Cir. 7/1/98), 716 So.2d 441, 445-46 (observing that "[n]o expert testimony reveals that alternatives to the surgery existed, other than perhaps no surgery" and finding summary judgment appropriate).

application for supervisory writ. We grant the writ but deny the requested relief.

**APPEAL CONVERTED TO SUPERVISORY WRIT APPLICATION; WRIT GRANTED; RELIEF DENIED**